# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

PHILLIP BAILEY,

    Petitioner,

v.

LYNNIE EINERSON, Superintendent, Wildwood Correctional Center,

    Respondent.

Case No. 3:23-cv-00083-SLG-KFR

**REPORT AND RECOMMENDATION TO DISMISS HABEAS PETITION**

Before the Court is a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") filed by Petitioner Phillip Bailey.[1] Defendant Lynnie Einerson filed an answer,[2] to which Petitioner filed a reply.[3] Because the Petition was filed two months past the expiration of the one-year federal habeas limitations period, and because tolling does not save this untimely filing, the Court recommends that the Petition be **DISMISSED.** Accordingly, the Court also recommends that Petitioner's Motion for Evidentiary Hearing[4] be **DENIED** as moot.

## I. BACKGROUND

In 2012, an Alaska state jury found Petitioner guilty of first-degree murder for killing Dale Prater.[5] In convicting Petitioner, the jury rejected his argument that he had shot Prater in self-defense.[6] Petitioner appealed his conviction to the Alaska Court of Appeals, arguing that the trial court erred by (1) limiting the testimony of his proposed self-defense expert, (2) allowing the state to introduce evidence of his

---

[1] Doc. 1.
[2] Doc. 14.
[3] Doc. 20.
[4] Doc. 18.
[5] Doc. 14-1 at 994.
[6] *See, e.g.*, *id.* at 347–48.

marijuana dealing to establish a possible motive for the murder, and (3) denying his motion for a mistrial based on the admission of this evidence.[7] The Court of Appeals affirmed Petitioner's conviction in December 2015.[8] Petitioner then filed a petition for hearing in the Alaska Supreme Court, seeking discretionary review of the Court of Appeals' decision.[9] The Alaska Supreme Court summarily denied this petition on February 16, 2016.[10] Petitioner did not file a petition for writ of certiorari from this decision to the U.S. Supreme Court.[11]

In March 2015—while Petitioner's direct appeal of his conviction was still pending in the Alaska Court of Appeals—Petitioner filed a *pro se* application for post-conviction relief with the Alaska Superior Court in Palmer.[12] In this application, Petitioner asserted that his conviction was (1) obtained in violation of the United States and Alaska Constitutions, (2) based on perjured testimony, and (3) obtained through ineffective assistance of counsel.[13] Petitioner further alleged that mitigating evidence was not presented at his trial, that he was compelled to testify at his trial, that he was denied the right to confront witnesses, that the trial court improperly limited his expert witness's testimony, and that certain unspecified evidence was improperly withheld until trial.[14] The Superior Court appointed counsel to represent Petitioner for purposes of this application for post-conviction relief.[15] Petitioner's counsel requested and the Superior Court granted a stay of the post-conviction action until the resolution of Petitioner's direct appeal.[16] The superior court granted this stay and ultimately lifted it in April 2016, after Petitioner's direct appeal ended with

---

[7] Docs. 14-5; 14-7.
[8] *Bailey v. State*, No. A-11471, 2015 WL 9257034 (Alaska App. Dec. 16, 2015).
[9] Doc. 14-8.
[10] Doc. 14-10.
[11] *See* U.S. S. Ct. R. 13.
[12] Doc. 14-11.
[13] *Id.* at 4.
[14] *Id.* at 4–5.
[15] Doc. 14-14.
[16] Doc. 14-15.

the Alaska Supreme Court's denial of his petition for hearing.[17]

Petitioner's state post-conviction action was plagued with delays.[18] In May 2021, after working with several different attorneys over the course of the action, Petitioner asked to represent himself.[19] The Superior Court granted this request.[20] The state then filed a motion to dismiss the post-conviction application for failure to plead a *prima facie* claim.[21] Petitioner did not file a response to this motion, even after the Superior Court *sua sponte* granted two extensions of time and provided notice of its intent to rule.[22]

On February 17, 2022, the Superior Court dismissed Petitioner's application for post-conviction relief.[23] The Superior Court concluded that Petitioner had not made a prima facie case that he was entitled to relief, pointing to Petitioner's failure to support his claims with specific facts supported by evidence or references to the record.[24] Petitioner did not appeal this decision.[25]

On October 27, 2022, Petitioner filed a second *pro se* application for post-conviction relief with the Superior Court.[26] In this application, Petitioner claimed ineffective assistance of counsel based on his trial attorneys' alleged failure to investigate Prater's criminal history and rely on that evidence at trial.[27] Petitioner

---

[17] Doc. 14-19.
[18] The record indicates that some of these delays resulted from workload issues at the public agency appointed to represent Petitioner and from the failure of one of Petitioner's attorneys to meet court-ordered filing deadlines or to consistently appear for scheduled hearings. *See* Docs. 14-18; 14-20; 14-21; 14-22; 14-23; 14-24; 14-27; 14-28; 14-29; 14-30. Other delays appear to have resulted from difficulties Petitioner's subsequent attorney had communicating with him, which eventually led that attorney to withdraw from the case. *See* Docs. 14-34 at 14; 14-36; 14-37; 14-38.
[19] Doc. 14-37.
[20] Doc. 14-38.
[21] Doc. 14-40.
[22] Docs. 14-41; 14-42.
[23] Doc. 14-43.
[24] *Id.* at 2–4.
[25] Doc. 1 at 4.
[26] Doc. 14-44.
[27] *Id.* at 5.

also alleged that the state intentionally withheld evidence of Prater's criminal history.[28]

In addition to his application, Petitioner submitted a request for a filing fee exemption, explaining that he could not pay the whole filing fee because his facility was refusing to employ him.[29] Petitioner indicated that, in keeping with the requirements set forth in Alaska law, he had ordered a certified copy of his account statement from the Alaska Department of Corrections to accompany his request.[30] On January 5, 2023, the Superior Court granted Petitioner an exemption from paying the standard $250 fee and ordered him to pay a reduced filing fee of $44 within 30 days.[31] On March 3, 2023, after Petitioner failed to pay this reduced filing fee, the Superior Court dismissed the action.[32] Petitioner did not appeal this decision.[33]

On April 17, 2023, Petitioner filed the present Petition in federal district court.[34] Petitioner seeks federal habeas relief from his first-degree murder conviction, arguing that (1) the attorneys who represented him in his first state post-conviction relief action provided ineffective assistance, (2) the Superior Court "obstructed" his second state post-conviction relief application by dismissing the case when he was attempting to earn the money to pay the reduced filing fee, (3) the attorneys who represented him at trial and on direct appeal of his conviction provided ineffective assistance because they failed to adequately investigate Prater, (4) his sentence constitutes cruel and unusual punishment because he was unable to present evidence of Prater's "criminal and psychotic history" at trial or on direct appeal, and (5) the prosecution in his criminal case unlawfully withheld exculpatory

---

[28] *Id.*
[29] Doc. 14-46.
[30] *Id.* at 1; *see also* AS 09.19.010.
[31] Doc. 14-46 at 2; Alaska R. Admin. 9(b)(1).
[32] Doc. 14-47.
[33] Doc. 1 at 4.
[34] *Id.* at 1.

evidence that "might have led to a not guilty verdict."[35]

Respondent filed an answer, asking the Court to dismiss the Petition.[36] According to Respondent, dismissal on procedural grounds is appropriate because (1) the Petition is untimely, (2) Petitioner failed to exhaust his remedies in state court, and (3) Petitioner's claims are now procedurally defaulted.[37] Respondent further contends that even if the claims are reviewed on their merits, dismissal is proper because Petitioner has failed to raise any valid grounds for federal habeas relief.[38]

Petitioner filed a reply, opposing dismissal of the Petition, and moved for an evidentiary hearing to present evidence pertaining to his claim that the prosecution in his criminal case unlawfully withheld exculpatory evidence.[39] Respondent filed a response to the Motion for Evidentiary Hearing, urging the Court to deny the Motion as both premature and unwarranted.[40]

After reviewing the parties' initial briefing, the Court ordered the parties to file supplemental briefing addressing two issues: (1) whether Petitioner is entitled to equitable tolling of the one-year statute of limitations applicable to federal habeas corpus petitions; and (2) whether Petitioner could show cause for his failure to appeal the dismissal of his two state post-conviction relief actions and prejudice arising from a violation of federal law.[41] The Court warned Petitioner that "fail[ure] to file a supplemental brief by the deadline set in this Order" could result in "dismiss[al] [of] the Petition with prejudice."[42]

Petitioner timely filed a supplemental brief in which he maintains that he is

---

[35] *Id.* at 5–10.
[36] Doc. 14.
[37] *Id.* at 17–23.
[38] *Id.* at 23–35.
[39] Docs. 18; 20.
[40] Doc. 19.
[41] Doc. 21.
[42] *Id.*

entitled to equitable tolling based on (1) his lack of legal expertise combined with limited access to legal research and drafting tools, (2) a lack of funds necessary to pay his litigation costs, (3) the loss of his criminal case files by one of the attorneys who represented him in his first state post-conviction relief action, (4) his prior attorneys' "deliberate . . . obstructi[on]" of his "pursuit[]s for justice," and (5) delays in the state courts due to high caseloads and COVID-related backlogs.[43] Petitioner's supplemental brief does not address the second issue the Court ordered Petitioner to discuss: whether he could show cause for his failure to appeal the dismissal of his state post-conviction relief actions and prejudice arising from a violation of federal law.

Respondent filed a response to Petitioner's supplemental brief, arguing that Petitioner's failure to address this second issue means that he has failed to excuse his procedural default and that dismissal on that basis is therefore appropriate.[44] In the alternative, Respondent contends, the Court may dismiss the Petition because the grounds Petitioner has proffered to explain his failure to timely file the Petition are inadequate to trigger equitable tolling.[45]

## II. LEGAL STANDARDS

Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show that they are held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States.[46] A petitioner seeking federal habeas review of their conviction or sentence must satisfy certain procedural requirements before they may obtain such review.[47]

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), one of these requirements is that a petitioner's federal habeas claims

---

[43] Doc. 22 at 1–3.
[44] Doc. 23 at 2.
[45] *Id.* at 3–8.
[46] *See* 28 U.S.C. § 2254(a).
[47] *See Dominguez v. Kernan*, 906 F.3d 1127, 1135 (9th Cir. 2018).

must be filed within one year from the latest of: (1) the date the state court judgment became final by the conclusion of direct review or the expiration of time to seek such review; (2) the date on which an impediment to filing created by state action is removed; (3) the date on which a constitutional right is newly recognized by the U.S. Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim(s) could have been discovered through the exercise of due diligence.[48]

This one-year limitations period may be tolled—that is, stopped or suspended from running—in two ways. First, AEDPA provides for tolling while "a properly filed application for State post-conviction or other collateral review . . . is pending."[49] Second, the limitations period may be tolled "when it is equitably required."[50] A petitioner seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[51]

### III. DISCUSSION

As a threshold matter, the Court must consider whether the Petition's claims are subject to any procedural bar before it may turn to the merits of those claims. Because statute of limitations issues are typically resolved before other procedural issues such as exhaustion or procedural default, the Court starts by evaluating whether Petitioner's claims are timely.[52]

//
//

---

[48] 28 U.S.C. § 2244(d)(1).
[49] *Id.* § 2244(d)(2).
[50] *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011).
[51] *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).
[52] *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).

### A. Petitioner Was Required by Statute to File His Federal Habeas Petition by February 17, 2023.

AEDPA imposes a one-year statute of limitations on state prisoners seeking federal habeas relief from their state convictions.[53] As it relates to Petitioner's claims, AEDPA's statute of limitations began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[54] The judgment in Petitioner's criminal case became final on May 16, 2016, when the time expired for seeking a writ of certiorari from the Alaska Supreme Court's denial of his petition for hearing in his direct appeal.[55]

However, AEDPA also provides that the limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending."[56] Since Petitioner had properly filed his first state post-conviction action over a year earlier,[57] the federal habeas limitations period was statutorily tolled between the date his conviction became final and the date that state post-conviction action ended. Thus, the limitations period was tolled until February 17, 2022, when Petitioner's first state post-conviction action ended by way of dismissal.[58]

---

[53] 28 U.S.C. § 2244(d)(1).

[54] *Id.* § 2244(d)(1)(A). Though AEDPA provides for three exceptions to the general rule that the statute of limitations begins to run on the date the judgment becomes final, none of these exceptions apply here: Petitioner does not allege that he was "prevented" from filing the Petition by state action, assert a violation of a newly recognized constitutional right, or allege that the factual predicate of his federal habeas claims could not have been discovered with due diligence until a later date. *See id.* § 2244(d)(1)(B)–(D).

[55] *See Zepeda v. Walker,* 581 F.3d 1013, 1016 (9th Cir. 2009) ("The period of direct review after which a conviction becomes final includes the 90 days during which the state prisoner can seek a writ of certiorari from the United States Supreme Court." (citation omitted)); *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (holding that where a petition for review by a state supreme court is filed and no petition for certiorari is filed in the U.S. Supreme Court, the one-year limitations period begins running the day after expiration of the 90-day time within which to seek review by the U.S. Supreme Court).

[56] 28 U.S.C. § 2244(d)(2).

[57] Doc. 14-11.

[58] Doc. 14-43.

Respondent contends that from that date, the limitations period ran unabated until it expired a year later.[59] Respondent acknowledges that Petitioner filed a second state post-conviction relief application on October 27, 2022, which theoretically could have tolled the limitations period again.[60] Respondent argues that this action did not actually toll the limitations period, however, because Petitioner's application was not "properly filed" in accordance with AEDPA.[61] Petitioner does not respond to this argument.

For a period of time to be tolled by virtue of a pending state post-conviction relief application, that application must be "properly filed."[62] The Supreme Court has explained that

> [a]n application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.[63]

These laws and rules are ones that set forth "condition[s] to filing," as opposed to "condition[s] to obtaining relief."[64]

Here, Petitioner's failure to pay the reduced filing fee to accompany his second post-conviction relief application means that this application was not "properly filed" within the meaning of AEDPA. Alaska Administrative Court Rule 9 governs filing fees in the state courts and provides that the required filing fee in "any civil case" before a superior court is $250.00 absent a fee waiver, in which case the fee is set by the court.[65] Petitioner properly requested a fee waiver, which the Superior Court granted, finding that "exceptional circumstances prevent[ed] [Petitioner]

---

[59] Doc. 14 at 17–18.
[60] *Id.*
[61] *Id.* at 18.
[62] 28 U.S.C. § 2244(d)(2).
[63] *Artuz v. Bennett*, 531 U.S. 4, 8–9 (2000) (emphasis, footnote, and citations omitted).
[64] *Id.* at 11.
[65] Alaska R. Admin. 9(b)(1), (f)(4).

from paying the full filing fee" and reducing his filing fee to $44 to reflect those circumstances.[66] The Superior Court warned Petitioner that his case could be dismissed without further notice if he did not pay the reduced filing fee within 30 days.[67] Petitioner did not pay the filing fee within this time frame or ask the Superior Court for more time to secure the funds needed to pay the fee. The Superior Court properly dismissed the case based on Petitioner's unexplained failure to timely pay the filing fee.[68] Because this dismissal was due to the post-conviction relief application's lack of compliance with a condition to filing in the Alaska courts, the application was "pending, but not properly filed" before its dismissal.[69] Filing this application thus did not stop the limitations clock on Petitioner's federal habeas claims.[70]

Therefore, the time between Petitioner's filing of his second post-conviction relief application and the dismissal of that application is not statutorily tolled. Absent equitable tolling, the one-year limitations period for filing the Petition expired on February 17, 2023.

**B. Petitioner Has Not Shown that He Is Entitled to Equitable Tolling.**

To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[71] An extraordinary circumstance must both have been the "cause of [the petitioner's] untimeliness" and have made it

---

[66] Doc. 14-46.
[67] *Id.* at 2.
[68] Doc. 14-47.
[69] *Cf. Artuz*, 531 U.S. at 9 (explaining that if an application "is erroneously accepted without the requisite filing fee," it should be considered "pending, but not properly filed" (emphasis removed)).
[70] *See also Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (rejecting argument that tolling applies when a prisoner files a state post-conviction petition that does not comport with filing rules setting time limits on such petitions, explaining that doing so would "open the door to abusive delay" by creating a "de facto extension mechanism . . . contrary to the purpose of AEDPA").
[71] *Holland*, 560 U.S. at 649 (internal quotation marks omitted).

"impossible to file a petition on time."[72] Equitable tolling is justified in very few cases because "the threshold necessary to trigger [it] . . . is very high, lest the exceptions swallow the rule."[73]

Petitioner suggests that he should receive equitable tolling because his lack of resources while incarcerated, the actions of the attorneys who represented him in his criminal case and his first state post-conviction relief action, and delays in the state courts constitute extraordinary circumstances that prevented him from timely filing the Petition.[74] However, Petitioner has failed to meet his burden of showing that any of these grounds is an extraordinary circumstance that prevented him from filing the Petition on time.[75]

### 1. Petitioner's limited access to resources while incarcerated and general processing delays by his facility are not extraordinary circumstances that prevented him from timely filing his federal habeas claims.

Petitioner first contends that his incarceration created obstacles that prevented him from having enough time or resources to meet the deadline to file a federal habeas petition. Specifically, Petitioner states that he had to compete with other prisoners for the use of "a few out-dated books, two type-writers[,] and two computers that are restricted [to performing] case-law, statutes, codes, and policy searches."[76] Petitioner argues that these resources were not enough and that the situation was made worse by his lack of legal expertise.[77] Petitioner further states that the facility in which he is incarcerated generally restricts his access to his

---

[72] *Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010) (internal quotation marks omitted).
[73] *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted).
[74] Doc. 22 at 1–3.
[75] Relatedly, Petitioner does not squarely address whether he exercised reasonable diligence in pursuing his federal habeas rights, *see Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2013), *cert. denied*, 568 U.S. 1053 (2012), and his diligence is not evident from the available record.
[76] Doc. 22 at 2.
[77] *Id.*

documents and that it takes the facility a long time to perform tasks necessary for litigation.[78] Petitioner also maintains that he was not able to "obtain the finances needed for the copying of documents, postage . . . , and other expenses involved with litigation," because his prison job only paid him 50 cents per hour.[79]

The Court finds that Petitioner has not met his burden to show that these hardships made it impossible for him to file the Petition on time. Petitioner's allegations that he had limited access to legal research resources and drafting tools do not indicate that the facility's restrictions on that access were beyond the norm in a prison setting or otherwise "extraordinary."[80] The same is true of Petitioner's access to his legal files. Although a deprivation of legal materials can constitute an extraordinary circumstance warranting equitable tolling,[81] Petitioner's allegations do not meet the high bar for establishing an entitlement to equitable tolling in cases involving such a deprivation. Petitioner has not alleged that he was entirely denied access for any period of time, that the facility's restrictions made him unable to access particular documents in specific instances, or how greater access might have allowed him to timely file the Petition.[82]

---

[78] *Id.*

[79] *Id.*

[80] *See Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (holding that petitioner was not entitled to equitable tolling "simply because he [was] in administrative segregation and had limited access to the law library and copy machine" (internal quotation marks and alterations omitted)).

[81] *See Lott v. Mueller*, 304 F.3d 918, 924–25 (9th Cir. 2002).

[82] *See Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013–14 (9th Cir. 2009) (holding that petitioner had not shown that deprivation of legal materials was an extraordinary circumstance where petitioner was "allowed to retain three boxes of legal materials, with the remainder stored for him either in prison or with his counsel such that he would have access to them upon request," and where petitioner had not "point[ed] to specific instances where he needed a particular document, could not have kept that document within his permitted three boxes . . . , and could not have procured that particular document when needed); *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027 (9th Cir. 2005) (holding that facility's complete refusal to give petitioner access to his legal files until after petitioner's release from administrative segregation was an extraordinary circumstance for purposes of equitable tolling).

Petitioner's other allegations similarly do not show that his incarceration presented extraordinary circumstances that made it impossible for him to timely file this specific Petition. Petitioner's general complaints of processing delays on the part of his facility do not indicate that any such delay took the ability to timely file the Petition out of his control.[83] Moreover, although the Court accepts Petitioner's contention that it is difficult for him to obtain funds necessary for his legal expenses because of his prison job's low pay, this general statement does not entirely explain his failure to timely file his federal habeas petition. Petitioner commenced a second state post-conviction relief application in October 2022, when the limitations period was running, and filed several additional documents in that case over the course of several months.[84] In addition, although the Petition was filed two months late, Petitioner was able to pay the full $5 filing fee at that time.[85] Based on this record, it appears that Petitioner did not entirely lack funds or the ability to obtain the funds needed to file the Petition during the relevant time period, and that Petitioner's financial status was thus not the cause of the untimely filing.[86]

Furthermore, Petitioner's *pro se* status is not extraordinary and does not transform any of the relatively standard restrictions associated with prison life into

---

[83] *See* Doc. 22 at 2 (referencing delays in receiving copies, "clearing" requests for financial transactions, and mailing documents).

[84] Doc. 14-45.

[85] Doc. 1.

[86] Although Petitioner represented in his 2022 filing fee exemption request to the Superior Court that his facility was refusing to employ him, the Superior Court's reduction of the filing fee from $250 to $44 was presumably based on its determination of what Petitioner was able to pay based on the financial statement he submitted to support the request. *See* Doc. 14-45; AS 09.19.010 (authorizing courts to grant partial filing fee exemptions to prisoners in litigation against the state "[b]ased on the submission" of certain materials, including "a certified copy of the prisoner's account statement from the correctional facility in which the prisoner is being or has been held for the six-month period preceding the submission of the application"). Petitioner did not protest the filing fee reduction as incorrectly reflecting his ability to pay. Even crediting Petitioner's statement that he did not have the funds to pay the $44 filing fee for his second state post-conviction action when that fee was due, the record and Petitioner's assertions in the present litigation do not suggest that Petitioner was unable to come up with the $5 filing fee for the Petition over the course of the one-year limitations period.

a sufficient basis for equitable tolling.[87] Although the Court recognizes that Petitioner's incarceration inevitably made it more difficult for him to efficiently pursue his various legal remedies, Petitioner has not shown that any extraordinary circumstance related to his incarceration was the cause of his late filing or made timely filing impossible.

### 2. The actions of Petitioner's attorneys in his state proceedings are not extraordinary circumstances that prevented him from timely filing his federal habeas claims.

Petitioner next argues that the actions of the various attorneys who represented him in his state cases are responsible for his failure to timely file the Petition. Petitioner insists that "[each] one" of these attorneys "caused . . . injuries and delays" and "deliberate[ly] . . . obstruct[ed] [his] pursuit[]s for justice."[88] Petitioner further contends that an attorney who represented him in his first post-conviction relief action lost his criminal case files, which "hinder[ed] [his] ability to research all that has taken place from the time he was originally charged to present."[89]

The Court finds that these allegations do not demonstrate that Petitioner's state attorneys' actions might have been the cause of his failure to file his federal habeas petition on time. Attorney misconduct may be an extraordinary circumstance justifying equitable tolling only where it is "sufficiently egregious"; "ordinary attorney negligence" does not rise to this level.[90] Except for Petitioner's allegations as to the attorney who lost his criminal case files, Petitioner's assertions are far too

---

[87] *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (concluding that a petitioner's "pro se status [and] a prison library that was missing a handful of reporter volumes" were "hardly extraordinary given the vicissitudes of prison life" and did not make it impossible for petitioner to file on time).
[88] Doc. 22 at 3.
[89] *Id.* at 2.
[90] *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003).

vague to show that his delay in filing the Petition resulted from sufficiently egregious performance by any of his attorneys, let alone all of them.

Moreover, even assuming that the alleged conduct of the attorney who lost Petitioner's case files was sufficiently egregious, it was not the cause of the Petition's late filing. That attorney represented Petitioner for purposes of his first post-conviction relief case, not his federal habeas petition. In addition, the attorney was removed from the case in April 2019 and was immediately replaced by a new attorney.[91] As Respondent points out, this new attorney "would have obtained copies of the state court records, all of which were available from the state courts."[92] And, in any case, Petitioner chose to represent himself starting in May 2021, so even assuming that he had not received another copy of his case files by then, there is no apparent reason why he himself could not have requested and received another copy from the state courts.[93] Furthermore, Petitioner does not allege that he still could not access his case files in the year after February 17, 2022, when the statute of limitations for his federal habeas claims was running. In short, Petitioner had ample time and opportunity to regain his case files after his attorney allegedly lost them, such that the loss did not cause him to file the Petition late.[94]

### 3. Delays in Petitioner's state court proceedings are not an extraordinary circumstance that prevented him from timely filing his federal habeas claims.

Petitioner also submits that delays in the state courts caused by high caseloads and pandemic-related backlogs prevented him from filing the Petition on time.[95] The

---

[91] Docs. 14-12 at 4; 14-20 at 1–2.
[92] Doc. 23 at 6.
[93] Doc. 14-38.
[94] *See Majoy v. Roe*, 296 F.3d 770, 776 n.3 (9th Cir. 2002) (determining that petitioner's "attempt to place blame on his previous attorney and to assign his reliance on that attorney having made timely filing 'impossible' f[ell] short of the circumstances required to" demonstrate equitable tolling).
[95] Doc. 22 at 2.

Court disagrees. As explained above, the entire period during which Petitioner's first state post-conviction relief action was pending was statutorily tolled.[96] It is true that the action was pending for an unusually long time and that there were some delays that were beyond Petitioner's control.[97] However, these delays both have already been accounted for and bear no relationship to Petitioner's failure to timely file his federal habeas petition. To the extent Petitioner argues that delays in his second post-conviction relief action made it impossible for him to file the Petition on time, the Court finds that there was no remarkable delay in that case, which was dismissed less than five months after its commencement.[98] In addition, any limited delay while the fee issue was being resolved did not prevent Petitioner from timely filing the Petition. Indeed, there is no apparent reason why Petitioner could not have worked on the substance of the Petition during that time.

In sum, the record before the Court makes clear that, to the extent the Petition brings claims that are cognizable in federal habeas proceedings, Petitioner did not timely file these claims in accordance with AEDPA's one-year statute of limitations.[99] Neither statutory nor equitable tolling applies to any of the time following the dismissal of Petitioner's first state post-conviction relief action.[100] Therefore, relief

---

[96] *See supra* part III.A.
[97] *See supra* note 18.
[98] Docs. 14-44; 14-47.
[99] "Timeliness is determined on a claim-by-claim basis." *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012). Petitioner's claim that the Superior Court "obstructed" his second state post-conviction relief application may not technically be untimely, *see* Doc. 1 at 5; 28 U.S.C. § 2244(d)(1)(D), but in any event, it is not a cognizable federal habeas claim. This claim does not challenge the fact or duration of Petitioner's confinement and thus provides no basis for Petitioner's release from custody. *See Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011) ("[W]hen a prisoner's claim would not necessarily spell speedier release, that claim does not lie at the core of habeas corpus, and may be brought, if at all, under [42 U.S.C.] § 1983." (internal quotation marks and citation omitted)).
[100] The Court rejects Petitioner's unsupported assertion that a lack of prejudice to the respondent may excuse the untimely filing of a federal habeas petition. *See* Doc. 22 at 2–3. The equitable tolling analysis does not involve consideration of whether the respondent is prejudiced by the untimely filing of a petition. *See Holland*, 560 U.S. at 649–50.

on the merits of the Petition is barred. The Court thus declines to address Respondent's alternative substantive arguments for dismissal.[101]

## IV. CONCLUSION

Petitioner filed his federal habeas petition two months past the statutory deadline, and he is not entitled to tolling of any of the time after his first state post-conviction relief action was dismissed. Therefore, the Petition's claims are time-barred. Accordingly, the Court recommends that the Petition at Docket 1 be **DISMISSED,** and that Petitioner's Motion for Evidentiary Hearing at Docket 18 be **DENIED** as moot.

DATED this 18th day of March, 2024 at Anchorage, Alaska.

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

**NOTICE OF RIGHT TO OBJECT**

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the

---

[101] The Court notes that Petitioner raises certain claims for the first time in his supplemental brief. *See* Doc. 22 at 3–5. These claims are based in sovereign citizen ideology and are "patently frivolous." *See Bachmeier v. Einerson*, No. 3:23-cv-00179-SLG, 2023 WL 6796213, at *3 (D. Alaska Oct. 13, 2023) (internal quotation marks omitted) (quoting *United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986). They are also unresponsive to the Court's order for supplemental briefing, which requested briefing limited to the issues of equitable tolling and excuse for Petitioner's failure to appeal the dismissal of his two state post-conviction relief actions. Doc. 21; *see also Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (en banc) ("[A]n issue will . . . be deemed waived if it is raised for the first time in a supplemental brief."); *Brathwaite v. Sw. Med. Assocs., Inc.*, No. 2:22-cv-00729-JCM-NJK, 2024 WL 780704, at *4 n.6 (D. Nev. Jan. 24, 2024) ("Attempting to develop an argument in a supplemental brief ordered on a different issue typically fails to preserve that argument.").

presiding district court judge.[102] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[103]

A party may file written objections to the magistrate judge's order within 14 fourteen days.[104] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.[105]

---

[102] 28 U.S.C. § 636(b)(1)(B).
[103] *Id.* § 636(b)(1)(C).
[104] *Id.*
[105] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).